# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

November 18, 2019

**VIA ECF**

The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

     Re:    United States v. Bryan Cohen, 19 Cr. 741 (WHP)

Dear Judge Pauley:

We write on behalf of the defendant, Bryan Cohen, in the above-referenced case to request a modification to his conditions of release. Specifically, we seek to eliminate the condition of home detention and, in its stead, request that he be subject to stand-alone monitoring enforced by GPS with mandatory once-a-month home visits.[1] We respectfully submit that this modification will satisfy the Bail Reform Act's mandate to release a defendant on the **"least restrictive"** conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." See 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

Notably, the Pre-Trial Services Office has determined that this level of supervision is appropriate, and that home detention is not necessary for Mr. Cohen.[2] The Government, despite Pre-Trial's affirmative support, objects to any modification of Mr. Cohen's bail.

---

[1] Mr. Cohen's remaining conditions would remain, including a $750,000 unsecured bond secured by $250,000 cash, and co-signed by three financially responsible people, travel restricted to the Southern and Eastern Districts of New York, surrender of travel documents and no new applications, and to refrain from conduct alleged in the indictment.

[2] Pre-Trial Services Officer Ashley Cosme makes this recommendation after meeting with Mr. Cohen several times, visiting his apartment, and meeting his girlfriend and mother. Additionally, Officer Cosme has offered to address her Office's recommendation to the Court if necessary.

BRAFMAN & ASSOCIATES, P.C.

### I.    Background

Mr. Cohen is 33 years old and is a citizen of France. He lives in New York with his girlfriend. Since his arrest, his mother has moved from France to live with Mr. Cohen and his girlfriend in their one-bedroom apartment (Mr. Cohen's mother sleeps on the couch).

Mr. Cohen was arrested on October 18, 2019 on the instant Indictment and presented before Magistrate Judge Aaron. Though the Government asked for detention because they viewed Mr. Cohen as a risk of flight, Judge Aaron released Mr. Cohen on the following conditions:

- a $250,000 personal recognizance bond cosigned by three (3) financially responsible persons and secured by $250,000 cash;
- travel restricted to SDNY/EDNY;
- surrender travel documents and no new applications;
- supervision as directed by Pre-Trial Services;
- GPS monitoring;
- the defendant must refrain from conduct alleged in charging document;
- defendant to be released on own signature plus passport surrender with remaining conditions to be met by October 22, 2019.[3]

Under the current conditions, Mr. Cohen is confined to his one-bedroom apartment with his girlfriend and mother. He is unable to do any physical activity, shop for necessities, or even take a walk – essentials to maintain physical and mental health. We respectfully note that the Pre-Trial Service Office's original recommendation was a release on bail without any monitoring. It should also be noted that under Pre-trial's proposed alternative to home detention, stand alone monitoring enforced by GPS, Mr. Cohen's travel is restricted to the SDNY and EDNY and his movements will still be closely monitored during the time in which he awaits the opportunity to vigorously defend himself against the instant charges.

### II.    Government Representations

At Mr. Cohen's initial conference before this Court on October 22, 2019, the Government, in a renewed detention application, made several representations to the Court concerning Mr. Cohen's finances and what was indicated on his Pretrial Services Report. At the conclusion of the initial conference, this Court increased Mr. Cohen's bond to $750,000 and added the condition of home detention we now seek to have removed.

At the conference this Court stated that it "is troubled by the defendant's apparent lack of complete candor with pretrial services in this matter, and that certainly is one

---

[3] Pursuant to this Court's order, Mr. Cohen met all of those conditions by October 25, 2019.

**BRAFMAN & ASSOCIATES, P.C.**

aspect that is powering my decision to substantially increase his bail." (Tr.[4] at 25) We endeavor to make it very clear that it was always Mr. Cohen's intention to be fully transparent with this Court and Pretrial Services. While we do not allege bad faith on the part of the Government in making the aforementioned representations to this Court, we believe the Government was not entirely accurate and/or exaggerated their claims concerning Mr. Cohen's finances. We address each one in *seriatim:*

- The Government expressed "serious concern" that Mr. Cohen's foreign bank accounts and foreign properties total more than "$1,000,000." (Tr. at 15) *This information is materially incorrect. Mr. Cohen's assets overseas amounted to approximately $650,000 including all foreign bank accounts and the value of foreign properties net of mortgages. At the time, Mr. Cohen held $460,000 in his bank accounts in the United States. Despite the Government's attempt to paint an unbalanced picture between overseas assets and assets in the United States, Mr. Cohen held more assets in the United States than any foreign country. Also, despite the Government's miscalculations (addressed below), we respectfully note that Mr. Cohen's total assets are consistent with the compensation he has received from Goldman Sachs for nearly 10 years and, despite a portion of them being held overseas (Mr. Cohen moved to the Goldman Sachs New York office in August 2017), do not indicate that he is a risk of flight.*

- The Government represented that Mr. Cohen owned four properties in France and that "their overall value, was in excess of $500,000." (Tr. at 15.) *The defendant owns four relatively small investment properties in Saint-Raphael, the city where his parents live and where he grew up (two studios, one one-bedroom apartment and one two-bedroom apartment), which he purchased for amounts ranging from €90k to €160k ($100,000-$175,000). On every single one of his acquisitions, he secured a mortgage where the mortgage value represented between 80-90% of the apartment value. Accordingly, while the Government represented to be assets worth in excess of half a million dollars, they are in reality only worth about $160,000 in equity. This is also consistent with what the Mr. Cohen disclosed to the Pretrial Services Office (approximately $200,000) and was indeed reflected in their report. The Government failed to mention this disclosure during the initial conference before this Court.*

- The Government represented that Mr. Cohen had over $600,000 in foreign bank accounts, "including over a half a million dollars in the Isle of Jersey and over $100,000 in an account in France." (Tr. at 14.) *Mr. Cohen has had an account in the Isle of Jersey since he first moved to London in 2010 and started*

---

[4] "Tr." refers to the transcript of the October 22, 2019 initial conference before this Court.

3

**BRAFMAN & ASSOCIATES, P.C.**

> working at Goldman Sachs. At the time of the arrest, Mr. Cohen had a balance of £299,000 or $385,000, significantly less than "over a half a million dollars." Also, while the Government insinuates a nefarious intent in the offshore nature of this account, it was Goldman Sachs' recommendation to its new employees in the London office to open such an account. Since his hire in 2010, Mr. Cohen's salary was paid on this account and used as normal for all his expenses in the UK. Further, in the few minutes Mr. Cohen had to review the Pretrial Services report, a miscommunication occurred between Mr. Cohen and his then attorney preventing an opportunity for the record to be corrected [5] Mr. Cohen requests that all necessary corrections are made to the report to accurately reflect Mr. Cohen's assets as it has always been Mr. Cohen's intention to be fully transparent with the Pre-Trial Service's Office as well as this Court.

- The Government also argued that Mr. Cohen transferred $250,000 from a U.S. account mentioned in his Pre-Trial Report and had just "attempted to transfer the remaining 200 or so thousand dollars out of that account." (Tr. at 24.) *We note that Mr. Cohen transferred those funds from his Marcus account, an online saving account which is required to be linked to a checking account held by the same person. No checks and payments to other individuals could be made from that Marcus account. Mr. Cohen transferred $250,000 from his Marcus account to his U.S. checking account in order to issue a check for the bail and he made a subsequent transfer in order to pay for legal fees. Thus, Mr. Cohen was not liquidating assets for the purpose of fleeing the country as it may have been perceived.*

- The Government repeatedly asserted that the discovery of $24,000 in cash from Mr. Cohen and his girlfriend's apartment is evidence of Mr. Cohen's risk of flight. (Tr. at   12, 14) *First, Mr. Cohen and his girlfriend are both successful foreign individuals legally residing in the U.S. The concept of keeping an appreciable amount of cash in the home is the normal course for many other cultures, including their respective cultures. Second, a significant part of the cash came from Mr. Cohen's family members providing him a portion of an inheritance from a recent death in his family. Based on all of these arguments, we maintain that the $24,000 in cash seized by the FBI (nearly two years after the alleged conduct and recovered from a drawer and not hidden) from Mr. Cohen's and his girlfriend's apartment is evidence of nothing and should not be a factor warranting this Court to determine that he is a risk of flight.*

---

[5] As the Government noted, they were aware of this account based on Mr. Cohen's IRS filings which accurately reflected all of Mr. Cohen's assets. (Tr. at 15.)  Furthermore, Mr. Cohen disclosed this account to arresting FBI Special Agent Matthew Mahaffey who took his pedigree information and was also present in Court.

4

BRAFMAN & ASSOCIATES, P.C.

### III.     The Case Against Bryan Cohen Is Eminently Defensible

The Government's evidence produced thus far in this case is not strong. The case centers on two highly traded stocks which were widely publicized takeover targets. We note that Mr. Cohen never traded on those stocks, or any other stock for that matter. There are no emails, text messages, or written communications of any kind that demonstrate any guilt on the part of Mr. Cohen. We do not believe the government will produce a single incriminating written communication. There are no recorded phone calls or consensual recordings either by a cooperating witness, an undercover agent or a wiretap that implicate Mr. Cohen in any way. Accordingly, the Government's evidence is weak, thereby significantly reducing any incentive to flee.

### IV.     Conclusion

With great respect for the independence of this Court, we respectfully note that we ask for only the elimination of home detention from the substantial additional bail conditions imposed by your Honor. We submit that the GPS monitoring that was originally ordered at Mr. Cohen's presentment will be sufficient to monitor his travel within the Eastern and Southern Districts of New York.

As noted, this Court observed Mr. Cohen display an "apparent lack of complete candor with pretrial services in this matter." (Tr. at 25) We respectfully submit that Mr. Cohen was completely candid in his Pre-Trial interview and that any mistakes made by him was the result of the hurried manner in which these interviews are often conducted, and not the result of any effort to conceal or mislead.  Any such mistake was then exacerbated we believe by the failure of prior defense counsel to coherently address those issues at the time, despite the defendant's efforts to have his attorney focus on those specific issues. As the record reflects, prior counsel was then terminated by Mr. Cohen shortly thereafter, ostensibly, because of a lack of communication between his then attorneys and Mr. Cohen. Furthermore, the Government also compounded these errors because they too either did not fully understand what they were focused on or because they did not have available to them all pertinent information.

Furthermore, we respectfully note that, in addition to posting $250,000 in cash on the first business day after his arrest, three family members of Mr. Cohen have signed the increased $750,000 bond.

In any event, now, after almost a full month of home detention and being carefully monitored during that time by Pre-Trial Services Officer Ashley Cosme, we are advised that Officer Cosme believes that home detention is not warranted as to this defendant and supports our application for a modification from home detention to stand alone monitoring enforced by GPS.

We also respectfully note that while Mr. Cohen's mother is currently living with him and his girlfriend in a one-bedroom apartment, other members of his family are planning

**BRAFMAN & ASSOCIATES, P.C.**

to visit New York as well in the coming weeks in order to provide emotional support for him and to also celebrate the upcoming holidays as a family. It would be very difficult if the defendant was not able to visit with them at their hotels, but was instead required to host all of his family in his small apartment.

Finally, although certainly not dispositive, we respectfully note that Mr. Cohen has retained **and** paid private counsel to defend this matter in Court, not so that he could become a fugitive, in a case where Mr. Cohen looks forward to defending the charges at trial.

For all of the aforementioned reasons, we urge this Court to follow the recommendation of the Pre-Trial Services Office to modify Mr. Cohen's conditions of release to eliminate home detention.

While we understand that the Court may choose to resolve this issue based on written submissions from both sides, counsel for Mr. Cohen are prepared for a hearing on this issue at a time convenient to the Court in the event that your Honor feels that oral argument will be more efficient.

Thank you for your consideration.

Respectfully submitted,

Benjamin Brafman

cc:   All Counsel (via ECF)
      Pre-Trial Services Officer Ashley Cosme (via email)