**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 19, 2019

**BY ECF**

Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:   **United States v. Bryan Cohen,**
              **19 Cr. 741 (WHP)**

Dear Judge Pauley:

     The Government respectfully submits this letter in opposition to the defendant's November 18, 2019 letter seeking to remove home confinement as a condition of his release ("Def. Let."). For the reasons set forth below, this request should be denied.

## Background

     The defendant has been charged in two counts for his participation in an insider trading conspiracy. As alleged in the Indictment, the defendant had access to material, non-public information ("MNPI") by virtue of his employment at an investment bank (the "Investment Bank"), and illegally passed that MNPI to a securities trader ("CC-1") in order to enable CC-1 to place timely, profitable trades based on that MNPI. In exchange for providing his stolen MNPI, the defendant was provided with benefits by CC-1, including substantial amounts of cash. In order to communicate about the MNPI, the defendant and CC-1, among other things, obtained and used prepaid, unregistered "burner phones," over which they exchanged information in code, in order to evade detection by law enforcement.

     The defendant was arrested in connection with these charges on or about October 18, 2019. At the time, the defendant – a French citizen – had been working in the United States for approximately two years. Following his arrest, the defendant was suspended by the Investment Bank. The defendant was living in an apartment in Manhattan with his girlfriend of approximately one year, also a foreign national. There is no dispute that the defendant has substantial assets; some in the U.S., but primarily overseas. For example, through his tax filings (and as he concedes in his letter), the defendant has reported having over half a million dollars in overseas bank accounts. In his letter, the defendant also admits to owning at least four properties in France, and the defendant's tax returns reflect that he has asserted the value of those properties

to be in excess of half a million dollars.[1]  At the time of his arrest, the defendant also had approximately $24,000 in cash hidden in a sunglasses case, which itself was hidden inside a clothes drawer within a closet in his apartment.

At his arraignment on or about October 22, 2019, the Government argued that the defendant should be remanded pending trial due to the risk of flight that he presented.[2]  The Court carefully considered the Government's arguments in favor of remand as well as the defendant's arguments about his ties to the United States, and the Court continued the defendant on bail, but added home detention as a condition.  This condition, along with the bond and travel restrictions imposed on the defendant, are absolutely necessary to ensure that the defendant continues to appear in court pending trial.

### The Defendant Remains a Substantial Risk of Flight

At arraignment, this Court recognized that home detention was necessary because the defendant presented a significant risk of flight.  Nothing in the defendant's recent submission in any way changes that fact.  First, the defendant's letter concedes that the defendant has substantial assets overseas, including over half a million dollars in the bank and at least four properties.  (Def. Let. at 3).  These assets provide the defendant with the means to flee.  If the defendant were to flee to France, it is also undisputed that as a French citizen, he would not be subject to extradition by France.  In fact, another French citizen who has been charged for his involvement in distinct but overlapping insider trading activity was arrested in another country, given bail, and then returned to France (from which he cannot be extradited) in the fall of last year.  *See United States v. Taylor*, 18 Cr. 184 (VSB).  Given the concerns about the defendant's risk of flight, home detention is necessary to ensure the defendant's continued presence in court.

Whether the defendant's assets are slightly higher or lower than what they appeared to be in the pre-trial report, the fact remains that the defendant has both family and substantial assets overseas that would enable him to flee to and remain in France without being subject to extradition.  While the Government is still concerned that it does not have complete and accurate information about the defendant's assets given that they are predominantly overseas, the assets the Government does know about paint a picture of an individual who could live very comfortably if he is able to return to France.  In addition to the overseas assets the defendant has declared to the IRS, the Government's evidence at trial will demonstrate that the defendant

---

[1] The defendant's letter makes numerous assertions about the value of the defendant's assets without attaching even a single supporting documents.  Given that most of these assets are overseas, the Government is unable to meaningfully assess the defendant's descriptions and valuations.  Given the lack of evidence and the self-serving nature of his submission, the Court should place little weight on the defendant's own description of his overseas assets.

[2] In fact, another participant—who is a United States citizen, married to a United States green card holder, but who has substantial overseas ties and access to overseas wealth—who has been charged for his involvement in distinct but overlapping insider trading activity, and was arrested on the same day as the defendant, has been remanded pending trial by the Honorable Denise Cote based on that defendant's substantial risk of flight.  *See United States v. Lavidas*, 19 Cr. 716 (DLC).

received substantial amounts of cash (which was delivered to the defendant and a relative of his in France) as part of the charged conspiracy, and that he stored part of that cash at his parents' home in the south of France.  Put simply, the defendant's motivation and ability to flee remain a substantial concern, and that concern exists whether or not the defendant was completely candid with pretrial.  Because of that serious concern, the defendant should remain on home confinement pending trial.

The defendant's arguments that the Government did not have accurate information at the arraignment are incorrect, and the purportedly new information provided by the defendant does nothing to allay the serious risk of flight.  As an initial matter, the Government's representations to the Court about the value of the defendant's assets were accurate.  While the defendant makes arguments in his letter about why those assets are in fact worth less than what is reflected on his tax returns, and why he believes they do not indicate that he is a flight risk, (Def. Let. At 3-4), the defendant does not dispute the accuracy of the information before the Court: that the defendant's 2018 tax return indicates that he declared a $533,333 balance in a bank account in the Isle of Jersey, and a $103,211 balance in a bank account in France, and also that he listed the cost basis of four real estate properties he owns in France at over $503,000.  Accordingly, the defendant remains a substantial risk of flight.

### The Evidence of the Defendant's Guilt is Strong

The defendant's claim that the Government's case is not strong is also wrong.  Among other things, the Government's evidence will establish that the defendant has access to MNPI by virtue of his work at an investment bank.  The Government's evidence will also establish that numerous securities traders, including CC-1, placed timely, profitable trades in the stock of companies about which the defendant had MNPI.  The Government's evidence will also show that these trades were conducted after the defendant obtained burner phones and used those burner phones to provide the illegally obtained MNPI to CC-1.  The use of burner phones by the defendant is highly incriminating evidence and also underscores the concern that the defendant may continue to engage in actions to evade law enforcement, including by fleeing the jurisdiction.  In sum, in light of the substantial evidence against the defendant, the defendant continues to have a strong motive to flee, and continued home detentions is necessary to assure his presence in court.

## Conclusion

For the foregoing reasons, the Court should deny the defendant's application.

> Respectfully submitted,
>
> GEOFFREY S. BERMAN
> United States Attorney
>
> by: _____/s/_____
> Richard Cooper/Daniel Tracer
> Assistant United States Attorneys
> (212) 637-1027/2329

cc:   Defense counsel (by ECF)