# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

June 1, 2020

**VIA ECF**
The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   United States v. Bryan Cohen, 19 Cr. 741 (WHP)

Dear Judge Pauley:

     We respectfully submit this letter on behalf of defendant Bryan Cohen to briefly respond to the Government's Sentencing Submission (Dkt. 44) (their "Submission") that, at points, misstates and/or omits key facts, misconstrues assertions in our Sentencing Memorandum on behalf of Mr. Cohen ("Memorandum"), and misleads the Court at various places including in their summary of the case they cite to for parity to Mr. Cohen's.  For the sake of efficiency, we focus, in this letter on a few of the more egregious features of their Submission.  At sentencing on June 4, 2020, however, we will be prepared to address any outstanding questions or concerns the Court may have.

- **Mr. Cohen's acceptance of responsibility:**  The Government, throughout their Submission, suggests that, because our Memorandum sought to comprehensively explain the facts and circumstances surrounding the offense conduct, somehow this effort undercuts Mr. Cohen's remorse and/or acceptance of responsibility.  This is a baseless and reckless accusation on behalf of the Government.  Mr. Cohen accepted responsibility very early in this matter and acknowledged his commission of the elements of the offense for which he is to be sentenced.  There is not a single sentence in our Memorandum that contradicts any part of his acceptance of responsibility; instead, we contend that our Memorandum coupled with Mr. Cohen's and other letters to the Court demonstrate an exceptionally poignant level of remorse worthy of consideration for the downward variance we seek.  Rather

BRAFMAN & ASSOCIATES, P.C.

than suppress the details which may paint a criminal defendant in a slightly more positive light than the Government would have it, it is entirely appropriate to apprise the Court of the full and complete aspects of the offense conduct.

- **Voluntary cessation of criminal conduct:** The Government argues that Mr. Cohen's "claims that he voluntarily terminated his criminal conduct before his arrest ring hollow in light of the evidence that he picked up burner phones from a criminal associate in 2018 even after he supposedly voluntarily withdrew from the scheme." (p. 12, *see also* p. 8)  Again, the Government, in a desperate overreach, conveniently disregards the undeniable fact that Mr. Cohen has not had a single communication with Demane nor engaged in any illicit activity since late 2017 despite being in possession of MNPI the entire time thereby demonstrating absolute, voluntary, and unilateral cessation of criminal conduct.  Moreover, accepting an additional burner phone, but choosing not to use it and throwing it away, only enhances our position on this point.

- **Gap in relationship with Demane:**  The Government, in a footnote, claims that "contrary to the self-serving suggestion by Cohen—[] there was never any real gap in Cohen and Demane's illicit relationship." (p. 4, fn. 2).  To support this notion, the Government argues that Mr. Cohen picked up a "burner phone within approximately a month of moving to New York and had no problem providing MNPI to Demane shortly thereafter."  The Government, in an attempt to distort the undisputed timeline in this matter, simply ignores the fact that Mr. Cohen had not communicated with Demane for approximately a year before he relocated to New York and departed without notifying Demane or giving him any forwarding details.  Thus, there was a clear gap in their "illicit relationship" and, further, it was Demane who endeavored to close that gap, not Mr. Cohen.

- **Unforeseeable sharing of MNPI with others:**  The Government conjectures that it is "unsurprising that passing MNPI to Demane resulted in the fueling of a vast and wide-ranging insider trading scheme" because Mr. Cohen "knew Demane was a securities trader and he knew that Demane was wealthy," and Mr. Cohen also knew that "Demane was well-connected in the banking and finance community." (p. 12).  This claim is nonsensical and categorically false as the Government knows when it states unequivocally that "[d]uring the scheme, Demane told Cohen that he would only use the MNPI to trade himself and not pass it to others."  (p. 4)

- **Amount paid to Mr. Cohen:**  Mr. Cohen admitted to receiving a substantial amount of money in return for providing MNPI to Demane.  Now, the Government, in their Submission, claims that "Demane recalls providing at least approximately $1 million worth of cash to Cohen."  Similar to the serious accusation from the Government regarding Mr. Cohen's family's knowledge of his crime or the allegation that he used this money to purchase real estate in France, this is a wholly

2

BRAFMAN & ASSOCIATES, P.C.

unsubstantiated contention in which the Government takes Demane at his word and just like those few aforementioned examples, this too, is false. This contention is based on an imprecise recollection by Demane of payments made to the defendant several years ago through intermediaries and among a multitude of other payments that Demane made to other individuals in his criminal web and, accordingly, should be disregarded by the Court.

- **Supervised release, community service and home detention in France:** The Government seems to view Mr. Cohen's request for a non-custodial sentence with the conditions of community service and, if the Court deems it necessary, additional home detention as a whimsical and convenient suggestion. To the contrary, would the same sentence in the United States be an available form of punishment to Mr. Cohen, he is fully prepared to serve such a sentence. However, were Mr. Cohen ordered to remain in the United States on probation or supervised release, he would be without status and subject to arrest, extended detention, and ultimately deportation by immigration authorities. Instead, we have suggested that the Court permit Mr. Cohen to voluntarily remove himself from the United States and impose an onerous requirement that he complete 2,000 hours of community service. We have also proposed that should the Court deem that home confinement is a necessary component of Mr. Cohen's sentence, an expert security company would simply provide the electronic monitoring which may be required by the Court and the Probation Department to ensure compliance with this condition. Both of these are not only legally available sentences but, as discussed in our Memorandum, have been imposed by other courts in this district and others.[1] Mr. Cohen's non-citizen status should not disqualify him from a fair and just sentence otherwise available to citizens of the United States, particularly when this form of restriction of liberty has been recognized as a necessity in a number of cases due to the COVID-19 pandemic's progression within the facilities of the Bureau of Prisons ("BOP").

- **COVID-19:** The Government's contention that our request for the Court to take into account the ***entirely unforeseen*** COVID-19 pandemic in sentencing Mr. Cohen is tantamount to seeking a "COVID-19-related windfall" (p. 15) is ludicrous. First, the Government attempts to blame Mr. Cohen for his application to proceed

---

[1] The Government's comment regarding our reference to *United States v. Connolly*, 16-cr-370 (CM) (p. 17, fn. 8) misses the point as we are not attempting to draw comparisons between the defendant's roles in what are very different cases, rather, we are citing to this case only to relay Chief Judge McMahon's clearly stated reasons for her decision to sentence defendant Black to nine months of home detention to be served in the United Kingdom while her inclination was to impose a term of incarceration in the United States (*see* Memorandum at p. 59). Judge McMahon describes the inequitable custody implications of sentencing Black to a period of imprisonment in the United States, the exact same disparate treatment that Mr. Cohen would be subject to as a foreign citizen.

BRAFMAN & ASSOCIATES, P.C.

to sentence by video, stating "[i]t was the defendant who sought to move forward with sentencing at this time, over the Government's objection." (*Id.*) They make this assertion despite Congress recognizing the importance of judicial proceedings moving forward in a great time of uncertainty and despite the Court, in granting our application, finding that "sentencing in this case cannot be further delayed without serious harm to the interests of justice." (Dkt. 41, p. 5). The Government then attacks Mr. Cohen for seeking to "use the circumstances of the pandemic to ask for a significant break at sentencing." (p. 15). Mr. Cohen has suggested a serious and viable alternative to a sentence of imprisonment which, we respectfully submit, fully satisfies the objectives of 18 U.S.C. § 3553(a) and also avoids placing him at risk of serious injury or death given his specific circumstances and the current situation in correctional facilities. To trivialize his application as gamesmanship in light of the Attorney General's guidance to the BOP seeking to expedite the release of at-risk inmates to home confinement,[2] the significant efforts taken by Courts to review compassionate release motions and class action petitions (including the recent Supreme Court's decision regarding the protection of inmates at Elkton FCI), and the terrifying latest findings from experts' inspections at various BOP facilities[3] is appalling. Further, the suggestion that the Court should merely delay a surrender date while Mr. Cohen, after already spending more than seven months under home detention, remains under confinement with no ability to work, earning no credit against a sentence of imprisonment and in the context of a pandemic with no timeline for a cure or vaccine which could delay a safe self-surrender date by a substantial amount of time is unjust and cruel.

- **The Government's attempts at distinguishing sentencing parity cases:** The Government seeks to distinguish a select few of the cases we cite to in our Memorandum.[4] In doing so, however, they expediently and purposely ignore salient facts about each case. For example, in *United States v. Jung*, 18-cr-518 (LAK), the defendant who occupied the same position as Mr. Cohen at the same investment bank opened a brokerage account in the name of a college friend living in South Korea in order to avoid detection; he traded himself on and further tipped MNPI to his brother regarding a dozen deals over a period of more than two years. Contrary to the Government's assertion, compared to Mr. Cohen's transgression, Jung's conduct was more serious, more prolonged/uninterrupted, involved

---

[2] Following which the BOP has already released more than 3,500 inmates to home confinement.

[3] *See* for example Dr. Homer Venters' Facility Evaluations at the Metropolitan Detention Center in Brooklyn (Apr. 30, 2020), 20-cv-1590 (RPK-RLM) [Dkt 72-1] and at the Metropolitan Correctional Center (May. 26, 2020), 20-cv-3315 (ER) [Dkt 51-1].

[4] The Government fails to address our analysis of *Bowers* (09-cr-496), P*eterson* (11-cr-665), or *Allen* (11-cr-997) as they are all analogous cases that resulted in non-custodial sentences.

"calculated deception" orchestrated by the defendant himself, generated significant illicit profits, and importantly, did not cease prior to being uncovered. Judge Kaplan imposed a 3-month prison sentence.

- **The Government's cite to the Stewart case:** Perhaps the most offensive of the Government's tactics in their Submission is their recitation of the relevant facts of *United States v. Stewart*, 15-cr-287 (JSR). Their Submission slyly leaves the impression that Stewart's sentence was 36 months for "more comparable" conduct to Mr. Cohen's (p.18). The Government, however, misleads this Court by omitting the facts that the defendant in *Stewart* was convicted twice at trial, willfully and materially perjured himself at his first trial, breached his bail conditions and was ultimately sentenced to 24 months by Judge Rakoff after his second trial.[5] Furthermore, the defendant tipped MNPI to his father numerous times over a period of four years while holding a senior position at two separate investment banks and terminating his criminal activity only upon his arrest. While employed at the first investment bank, Stewart lied to legal and compliance officials when questioned about his father's suspicious trading activity and also lied to FINRA about the same. The defendant got away with these lies, became a managing director at another investment bank and carried on passing MNPI to his father for another three years and, even to this day, has not accepted responsibility for his criminal conduct. Although the Government claims that Stewart received "no direct pecuniary gain," as mentioned by Judge Rakoff during Stewart's sentencing, "enriching your family member is the same," (*see* [Dkt. 367] Sent. Tr. (Dec. 11, 2019) at p. 9). Judge Rakoff also commented that he didn't "think it can be said in any meaningful way that [Stewart] didn't reap a substantial benefit." (*Id.*). The Government in their Submission further outrageously deceives the Court by going as far as stating that Stewart "did not utilize . . . calculated means to evade law enforcement," while in fact, the Government, who was represented by one of the AUSAs on the instant case, in Stewart's sentencing submission, describes how the defendant "fabricated a web of lies to prevent a regulator and bank compliance officials from discovering his criminal insider trading scheme." (*see* [Dkt. 363], Govt. Sent. Submission (Nov. 26, 2019) at p. 29). The Government also talks about how "the lies [Stewart] coached his father to tell the SEC in 2013, were calculated and intricate." (*Id*. at p. 26). Accordingly, the Government's underhanded reliance on this one case for sentencing parity should be ignored (or weigh heavily in favor of a non-custodial sentence for Mr. Cohen) and the Court should consider the cases cited in our Memorandum in order to avoid an unwarranted sentencing disparity and determine a fair and just sentence for Mr. Cohen.

---

[5] While we maintain that the Sentencing Guidelines range should be accorded little deference in both the *Stewart* case and Mr. Cohen's case, as a reference omitted in the Government's Submission, Stewart faced a guideline range of 63 to 78 months of imprisonment at his initial sentencing which included an enhancement for obstruction of justice.

BRAFMAN & ASSOCIATES, P.C.

      As we write in our formal Sentencing Memorandum, counsel respectfully submits that under the facts of this case as to this particular defendant, a sentence of time served and supervised release with a requirement that Mr. Cohen serve more than a full-year of community service (2,000 hours) is "sufficient but not greater than necessary" to impose a just punishment and promote respect for the law. This is especially so considering Mr. Cohen's early acceptance of responsibility, voluntary cessation of criminal conduct years before his arrest, the multitude of severe collateral consequences he has suffered as a result of his conviction (including among others deportation, permanent bar from the securities industry and more than seven months of home detention pre-sentencing), the inequitable treatment he, as a non-citizen, would face by being imprisoned in the United States, and the risk such sentence would pose to his health in the context of COVID-19. In recommending such a unique and specific sentence, although not unprecedented, counsel gave very careful thought to a number of considerations more fully discussed in the formal Sentence Memorandum and exhibits submitted on behalf of Mr. Cohen.

      Thank you for your consideration.

      Respectfully submitted,

      Benjamin Brafman

cc:    All Counsel (via ECF)